| | |
|---|---|
| Ryan Kerwin & Xtreme Caged Combat, | Chapter 13 |
| Plaintiffs, | |
| | Bankruptcy No. 14-19756-amc |
| vs. | |
| | Adversary Proceeding No. |
| Steven Rosenblum, | |
| Defendant, | Judge Ashley Chan |

## ADVERSARY COMPLAINT

### I. Parties;

1. On December 11, 2014, Defendant, Steven Rosenblum, residing at 3714 Vale Lane, Philadelphia, PA 19114 filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code in this court. Bankruptcy Case No. 14-19756-amc.

2. William Miller was appointed as the Chapter 13 trustee of the Debtor/ Defendant's bankruptcy estate, and he remains the trustee appointed in this matter to date.

3. Plaintiffs, Ryan Kerwin and Xtreme Caged Combat, located at 240 Brittany Drive, Langhorne, PA 19047, are the holders of non dischargable, non secured debts listed in Defendants Bankruptcy Schedules.

### II. Jurisdiction;

4. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334. This is a core proceeding.

## III. Venue;

5.     Venue for this matter is proper pursuant to 28 U.S.C. §1391 (a)(3).

## IV. Facts;

6.     On August 13, 2014, Plaintiffs obtained a $76,800.00 jury verdict against the Defendant and his co-defendant Ofa Donaldson for Trademark Infringement in the matter of Xtreme Caged Combat vs ECC Fitness, case # 12-3855.

7.     On the jury interrogatories that were returned along with the verdict in that case, the jury found that the defendant's conduct in committing the infringement in that case was intentional. **(Exhibit 1)** Intentional conduct, is synonymous with willful conduct.

8.     Some of the evidence that was produced at trial in that matter, that pertained to the injuries defendants caused him, is as follows:

A)     The testimony of Ryan Kerwin (Plaintiff) regarding the banks and individuals that had contacted him accusing him of stealing money out of ECC Fitness Clients accounts. Among the evidence that was produced on this issue was the email **(Exhibit 2)** and bank statements **(Exhibit 3)** of Alysse Mikula and the 9 fraudulent bank withdraws that defendants subjected her too over a months period of time which plaintiff was initially blamed for due to the confusion caused by the Trademark Infringement at issue.

B)     The trial testimony of Justin Haskell confirmed that both defendant Steven Rosenblum, and his co-defendant, Ofa Donaldson, knew of the constant calls and complaints regarding a slew of fraudulent bank and credit withdrawals they had subjected numerous clients to and joked, "send them to Ryan and let him deal with them."

C)    Plaintiff also testified about a bounced check Defendant Ofa Donaldson wrote out to Tents and Events that they accused Plaintiff of being responsible for **(Exhibit 4)** and the emails associated therewith. **(Exhibit 5)**

9.    This conduct was malicious and aimed at causing serious injury toward Plaintiff's reputation and his Trademark/Intellectual Property. Furthermore, this very same conduct did in fact cause serious injury to Plaintiffs' reputations and his Trademark/Intellectual Property.

10.    During the discovery period in that case, the Defendant refused to provide Plaintiffs with documents responsive to his Requests for Production of Documents. Specifically, he refused to provide any documents related to any bank accounts associated with the gym that was the subject of the Trademark Infringement in that case.

11.    Plaintiff eventually filed a hybrid Motion to Compel (His 3rd) and Motion for Sanctions (his 2nd) on July 22, 2013 for the Defendant's continued refusal to produce documents that were requested in discovery. The court granted the motion on August 8, 2013 **(Exhibit 6)** and ruled that:

1) The Defendants are directed to fully provide the Plaintiff with the requested discovery as stated in this Motion and the interrogatories and Requests for Production of Documents within 10 days from the date of this order.

2) If the Defendants fail to provide the requested discovery as ordered in paragraph 1 above, the defendants will be sanctioned under Fed.R.Civ.P. 37(b)(2)(A), and will be prohibited from disputing a $3,200 per month profit margin.

12.    The Defendant refused to obey that order.

13.    That sanction became effective and final 10 days after the order in question.

14.     After the judgement had been entered against Defendant in the Trademark Infringement suit, Plaintiff proceeded with his post judgement collection efforts and served Defendant with post judgment Interrogatories and Requests for Production of Documents.

15.     The Defendant refused to respond to those Interrogatories and Requests for Production of Documents and Plaintiff filed a Motion to Compel the production of that discovery on October 3, 2014.

16.     The court granted the Motion to Compel on October 21, 2014 and ordered the Defendant to respond to those discovery requests. **(Exhibit 7)**

17.     The defendant refused to obey that order and Plaintiff filed a Motion to Hold the Defendant in Contempt of Court for once again refusing to obey a court order concerning the production of financial discovery.

18.     The court granted the Contempt Motion and scheduled a contempt hearing to be held on December 16, 2014, to determine whether or not the Defendant should be held in contempt of court for refusing to obey the court's order ordering him to respond to Plaintiffs' discovery requests. **(Exhibit 8)**

19.     However, the Defendant filed the instant bankruptcy petition on December 11, 2014 effectuating an automatic stay of proceedings and he did not show up at that contempt hearing.

20.     Plaintiffs then filed a Motion to Dismiss the Bankruptcy for Filing in Bad Faith and a memorandum in support thereof on December 15, 2015. **(Exhibit 9 & 10)**

21.     Defendant later filed his bankruptcy schedules and omitted and lied about his financial situation and assets on those schedules. Those scheduled and filings were amended at least 4 times, each amendment being filed after Plaintiff pointed out a falsification or omission.

22.     Among those falsifications and omissions, was Defendant's claim that Michelle Zarro, the sister of his children's mother, owned his gym located at 8801 Torresdale Avenue in

Philadelphia, PA and that his father, Allan Rosenblum, owned half of his gym located at 8919 New Falls Road, in Levittown, PA.

23. Plaintiff later sued both Michelle Zarro and Allan Rosenblum in the Bucks County Court of Common Pleas under the Pennsylvania Uniform Fraudulent Transfer Act (P.U.F.T.A.) for claiming fraudulent ownership over these two gyms. **(Exhibit 11)**

24. The court later issued an order and opinion granting derivative standing to do so. **In re Rosenblum, 545 BR 846 (E.D. Pa. 2016)**

25. In that same opinion, this court found that Plaintiff was a current creditor of Defendants at the time the transfers to Michelle Zarro and his father were made which put the Fraudulent Transfer claims under §5105(a) of P.U.F.T.A. **In re Rosenblum, 545 BR 846, 858 (E.D. Pa. 2016)**

26. Section 5105(a) requires 3 elements to be proven in order to be entitled to relief. Those elements are:

(1) That a Plaintiff was a creditor whose claim arose before the transfer was made;

(2) That the debtor (Steven Rosenblum) made the fraudulent transfer without receiving equivalent value in exchange, and;

(3) That the debtor was insolvent at the time or became insolvent as a result of the transfer.

27. This court already ruled that Plaintiff was a current creditor under §5105(a) and the remaining two elements required to establish such a claim were established and proven at the Fraudulent Transfer Trial in the Bucks County Court of Common Pleas on October 7 & 8, 2019:

A) Prong 3 was established when Steven Rosenblum testified that he has not paid Plaintiff the debt he owes him and that he is not able because he doesn't have the funds. **(10/8/2019 N.T. pg. 128 lines 1 - 8 ; Exhibit 12)** He certainly would have been found to have had the funds to pay Plaintiff and been denied a discharge in bankruptcy if he had not fraudulently transferred $90,500+ of his assets though. **(10/7/2019 N.T. pg. 126 line 18 - pg. 127 line 6 ; pg. 131 lines 1 - 20 ; Exhibit 13)**

B) Prong 2 was established when Allan Rosenblum, Michelle Zarro and Steven Rosenblum all testified that Steven received nothing in exchange for the two fraudulently transferred gyms.

**Zarro -** **(10/8/2019 N.T. pg. 57 lines 8 - 16 ; pg. 59 lines 5 - 7 ; pg. 98 lines 11 - 15 ; Exhibits 12, Exhibit 14 & 15 at 19 and Exhibit 16 & 17 at 4)**

**Allan Rosenblum -** **(10/8/2019 N.T. pg. 140 line 21 - pg. 141 line 19 ; Exhibit 12)**

28. As a matter of fact, Allan Rosenblum testified at trial that he never owned the gym Defendant claimed he had half ownership over in his bankruptcy filings and he testified a follows: **(Fn. 1)**

**(10/8/2019 N.T. pg. 155 line 7 - 16 ; Exhibit 12)**

Q Sir, if you weren't going to go to the business and work there and you weren't collecting income, why did you partner on the gym?

A The partnership agreement is only based on the fact that we started LLC Liquidities **(Fn. 2)** Okay? Just because its my name on the document doesn't mean I'm an owner or an employee of the company  I'm paid no salaries, I earn no money.

Q Are you stating you were not an owner of the company?

A That's correct.

Q So then you did not own Quick Fit USA, LLC?

A That's correct. Steven owned it.

29. However, it was Defendant's claim that Allan Rosenblum owned half of Quick Fit USA, LLC that resulted in the 8919 New Falls Road Gym and all of its assets from being put out

**(Fn. 1)** Michelle Zarro did not appear at trial and present a defense. This is despite both her and defense counsel both stating in open court at a pre trial hearing that Michelle would be present at trial.
**(Fn. 2)** The words "LLC Liquidities" is a typo. This was supposed to say Quick Fit USA, LLC. There is no LLC Liquidities and the question being asked was about Quick Fit USA, LLC.

of Plaintiffs' reach as creditors in this court. Allan Rosenblum's testimony proves that Defendant committed bankruptcy fraud by claiming otherwise and Defendant testified that the gym was worth $90,500.00 and generated a profit of more than $50,000 a year at trial. **(10/7/2019 N.T. pg. 126 line 18 - pg. 127 line 6 ; pg. 131 lines 1 - pg. 132 line 4; Exhibit 13 ; 10/8/2019 N.T. pg. 115  lines 16 - 23 ; Exhibit 12 and 341 Testimony & Trial Exhibit P-102 at 36:38 - 37:42 & 1:15:02 - 1:15:32)**

30.    Defendant even admitted to committing perjury in this court and putting false information in his bankruptcy filings in that very same trial. Some of the perjury and bankruptcy fraud he testified to committing is as follows:

**(N.T. 10/8/19 Pg. 18 lines  8 - 20 ; Exhibit 12)**


**BY MR. KERWIN:**

**Q** Was that your voice?

**A** Yes.

**Q** Do you agree that Michelle Zarro signed a lease specifically to keep you at that property for a $6,500 debt that you —

**A** Absolutely not.

**Q** So was that testimony false?

**A** That was the testimony.

**Q** But was it false? If you're saying it's absolutely not, are you contending that that testimony was false?

**A** That was false.

---

**(N.T. 10/8/19 Pg. 27  lines 5 - 10 ; Exhibit 12)**

**Q** And did you not state in your 341 testimony that Ms. Zarro took over the lease and signed it because of that debt?

**A** Absolutely not.

**Q** You didn't say it?

**A** That's not the truth.

**Audio Recording from 341 testimony on 3/13/15 & Fraudulent Transfer Trial Exhibit P-102 at (1:09:00 - 1:11:59)**

**(1:09:00 - 1:10:00)**

**Q** Why did you give her ownership of the property?

**A** Because of all the headaches it was giving us, it wasn't profitable.

**Q** Why her?

**A** (6 second pause) She wants to be in fitness, she wants to lose weight, work out.

**Q** Does she currently pay the rental fees at that property?

**A** (13 second pause) No.

**Q** So does that mean that you currently pay the rent at that property?

**A** I'm actually, the deal was, was the landlord because we were back in the hole like $6,500.00.

**(1:11:40 - 1:11:59)**

**Q** So he would have let you continue to reside there?

**Defense Counsel** Objection, do you know what he is going to do?

**Q** I asked him would he

**Defense Counsel** How does he know?

**Q** Did he indicate to you at any time that he would allow you to reside there after the $6,500.00 you owed him was not paid?

**A** No, he threatened to shut the doors and change the locks.

**Q** When your counsel filed bankruptcy paperwork on your behalf, do you give them the information to put in that document or did they do it on their own?

**A** I give them the information to put in the documents.

**Q** Okay. Okay. So if that was filed in your bankruptcy, you would have given them that information, correct?

**A** Correct.

**Q** Okay. Now turn -- first of all, tell me what date that was filed.

**A** March 17th, '15.

**Q** 2015, correct?

**A** Yes.

**Q** Turn to Page 3. On that page, tell me what day you indicated to surrendering or turning over all the property at 8801 Torresdale to Michelle Zarro.

**A** July 2014 or —

**Q** Does it say July or August of 2014?

**A** Yes.

**Q** Okay. After I handed you the property claim in this case, didn't you just state to me that was false, that you did not own the property that you contended owning in that claim?

**A** Correct, I did not own that property.

**Q** So was that information false as well in your bankruptcy filings?

**A** This isn't -- there was no transfer.

**Q** Is the information false?

**A** That doesn't seem correct to me.

**Q** Then say it's false. I'm asking you.

**A** That's false.

31.    This was not the only perjury and fraud that defendant testified to committing at
that trial. He also testified to committing perjury regarding the transfers of his assets in the
Eastern District Court.

**(N.T. 10/7/19 Pg. 23 lines 21 - 25 ; Exhibit 13)**

**BY MR. KERWIN:**

**Q** So are you now admitting that you committed perjury during that trial? I'm asking you.
'Cause if it's untruthful —

**A** My recollection, that is not the truth.

**(N.T. 10/7/19 Pg. 26 lines 20 - 25 ; Exhibit 13)**

**THE COURT:** And I sustained the objection. Ask your next question. He's already
testified that the statements he made in that transcript he's now saying were not
truthful. Next question.

---

**(N.T. 10/7/19 Pg. 48 lines 13 - 25 ; Exhibit 13)**

**Q** How did you come up with that date?

**A** What was the date again?

**Q** August 20th, 2012.

**A** That was the date Quick-Fit took control of Charter.

**Q** Correct. That was your testimony. And did you not also testify that was the same date
that Quick-Fit took control of the 8801 Torresdale Gym?

**A** They never took control of 8801 Torresdale.

**Q** So I want to make sure it's clear, so are you saying that all of this testimony that
I'm holding in my hands is untruthful?

**A** If that's what it says, yes.

---

**(N.T. 10/7/19 Pg. 55 lines 14 - 21 ; Exhibit 13)**

Q So was Mr. Donaldson asking you questions in those portions of the transcripts?

A Yes.

Q Okay. So the questions that you said you answered untruthful four or five times on the same issue were responsive to something that Mr. Donaldson asked you, correct, not myself?

A Yes.

---

**(N.T. 10/7/19 Pg. 156 lines 9 - 14 ; Exhibit 13)**

Q Did you change your position since testifying in these transcripts?

A I am telling you the truth, that's not the case.

Q So you've changed your position, correct?

A Correct.

---

**(N.T. 10/7/19 Pg. 161 line 18 - Pg. 162 line 9 ; Exhibit 13)**

Q Okay. When did you start contending that was not the truth?

A This is the first time I'm seeing this.

Q And when did you start contending that that was not the truth? I'm going to keep asking it. When?

A It's always not been the truth.

Q Okay. When did you start contending, because you testified at that hearing it was the truth. When did you start saying that it wasn't?

A It's not the truth.

Q I'm going to keep asking.

A Today —

Q Give me a timeframe.

A Maybe 15 minutes ago when you asked me, that's not the truth.

Q Okay. So why did you wait more than five years to change your position?

A You mean today?

Q Yeah. You said 15 minutes ago

A We're in court right now and you just asked me the question.

Q Yeah, and I'm asking you why it took you this long to change your position on it.

A It didn't take me this long.

Q When did you change your position?

A It's always been false.

---

Q But in that form you're claiming ownership of the property in that gym, correct?

A Yes.

Q And what was the date again? I did forget. I'm legitimately asking.

A June 6th.

Q Of what year?

A '14.

Q Before I go further, how do you own all the equipment in this gym on June 6th of 2014 if whatever your prior testimony was it was at least one to two years prior you say you abandoned ownership of it?

A I was trying to help out a friend.

Q Yeah, but I'm asking how you still owned the property.

A I didn't own the property.

Q Did you file a fraudulent property claim?

A I was trying to help out a friend.

**Q** So are you saying that you didn't own the property and you claimed ownership over —

**A** I did not own the property inside his facility.

**Q** I'm just asking if in that form when you claimed --

**THE COURT:** Sir, he said yes.

**BY MR. KERWIN: Q** Is he—

**THE COURT:** He filed the property claim and he didn't own the property.

---

32.     The trial judge even acknowledged Defendant's criminal admissions of perjury

and bankruptcy fraud at the end of trial when he stated:

**(N.T. 10/8/19 Pg. 256 line 7 - Pg. 257 line 3 ; Exhibit 12)**

> **MR. EISENBERG:** Well, with respect to Michelle Zarro, Your Honor, Steven Rosenblum, Mr. Kerwin's witness to which he's bound, except in those circumstances when he may have impeached his testimony, Steven Rosenblum testified he abandoned --
>
> **THE COURT:** Do you really think I would believe anything Steven Rosenblum said?
>
> **MR. KERWIN:** Your Honor --
>
> **THE COURT:** I'm sorry to say this in front of his father, but the man is either -- either he has some possibly a mental disability or he's a total liar, I'm not sure which. He's certainly evasive, unwilling to say anything truthful, and he doctored his testimony to fit what he thought was his best interest. It was -- it was appalling. It was appalling. The man belongs in jail for testimony like that. So don't tell me to rely on anything Steven Rosenblum said. I don't care how he was impeached. He impeached himself day and night all the time.

33.     Defendant even hid the purchase of a brand new Honda Pilot, a trip with his

family to Disney World, an entirely different gym he owned, a boxing promotion he owned and

an arm wrestling promotion he owned from his bankruptcy estate.

34.     Defendant testified at the fraudulent transfer trial that he operated a Facebook

account under the alias Sam Junior. **(N.T. 10/7/19 Pg. 103 line 16 - 18; Exhibit 13)**

35.     As the court can see, Defendant posted on his secret Facebook page that he bought a 2016 Honda Pilot on October 28, 2016 **(Exhibit 18)** and that he was going to Disney World the week after October 27, 2016. **(Exhibit 19)** This vehicle and this money was hidden from Defendant's bankruptcy estate during his bankruptcy and the cheapest 2016 Honda Pilot he could have bought cost $29,995.00 **(Exhibit 20)**

36.     These are not even the only assets he has hidden from his bankruptcy estate and failed to disclose on his bankruptcy filings. He owns an Arm Wrestling Promotion **(Exhibit 21)**, a Boxing Promotion **(Exhibit 22)**, he owned and operated yet another gym **(Exhibit 23)**, sells dogs that he breeds **(Exhibit 24)**, etc......

37.     This court held the Defendant's bankruptcy in abeyance pending the outcome of the fraudulent transfer suit filed in the Bucks County Court of Common Pleas. That case has not yet concluded and unless the outcome of that case results in a final ruling in the appellate court that allows debtors to put all of their assets in their relatives name, exclude the assets from their estate, retain ownership over all of the assets and obtain a discharge of his debts in bankruptcy on account of the hidden assets, a new trial will be granted in that case. **(Fn. 3)**

38.     At trial, the judge in that case entered a non suit against Plaintiff and prevented the case from being decided by a jury. He did not give a reason on the record for granting the non suit but the entire conversation is contained at **(N.T. 10/8/19 Pg. 244 line 8 - pg. 277 line 5 ; Exhibit 12)** The judge has also refused to give a reason for his ruling when he denied Plaintiff's Motion for Clarification on the matter. **(Exhibit 25)**

39.     In actuality, there is no basis for granting the non suit which Plaintiff himself predicted would occur in a pre trial filing on account of all of the judicial misconduct that had

---

**(Fn. 3)** If that happens, Plaintiff is putting all of his assets in his family's name for free and declaring bankruptcy just like Steven Rosenblum did because that would now be law.

occurred in the case. **(Exhibit 26 at 19)** However, the judge repeatedly stated that if the

Defendants did not really own the property they claimed to own, that there was no transfer and

that fact was detrimental to my case against them at trial, at multiple off the record sidebars and

in a pre trial proceeding in that matter. **(N.T. 10/8/19 pg. 4 line 5 - pg. 5 line 17 ; pg. 244 line**

**23 - pg. 246 line 3 ; pg. 263 line 25 - pg. 264 line 1 ; Exhibit 12)**

40.     He also stated that if there was a fraudulent transfer that it would have been to

Quick Fit USA, LLC and not Allan Rosenblum. **(N.T. 10/8/19 pg. 247 lines 12 - 15 ; Exhibit 12)**

However, Plaintiff did sue Quick Fit USA, LLC for a Fraudulent Transfer in that case **(Exhibit 27)**

but this court held a hearing on that exact issue and threatened to hold him in contempt of court

if he did not withdraw Defendant and Quick Fit USA, LLC as defendants after the Defendant

requested that the court force Plaintiff to withdraw them as a defendants. Plaintiff obeyed this

court and did what it told him to do and he can't be threatened with contempt to carry out a

course of action and then be punished for obeying the court's order and carrying out that course

of action. If that happens, this court acted outside of its jurisdiction by issuing orders in an

unrelated case, a matter for which judicial immunity does not apply.

41.     Because of the judicial collusion in that case, Steven Rosenblum even began

denying that he transferred the assets he said he gave Michelle Rosenblum and Allan

Rosenblum in this court. **(N.T. 10/8/19 pg. 130 line 13 - 18 ; Exhibit 12) (Fn. 4)**

42.     The judge even stated that Defendant hiding his assets by claiming that Michelle

Zarro and Allan Rosenblum owned them did not form the underlying basis of the Fraudulent

Transfer case. **(N.T. 10/7/19 Pg. 207 line 3 - 9; Exhibit 13)**

---

**(Fn. 4)** Defendant did this because he knows he is being protected by the court. He literally
admitted to perjury and bankruptcy fraud and not only did he not get criminally charged but he
got a bankruptcy discharge without his creditors even being notified of a hearing or being given
the opportunity to be heard. **(Exhibit 28 pg. 3 at 10. - Other Transfers)** clearly shows he
claimed to have transferred property to Michelle Zarro and **(Exhibit 27 pg. 4 at 18. - Nature,
Location and Name of Business)** shows that he claimed Allan Rosenblum owned half of Quick
Fit USA, LLC even though Allan testified he never owned it.

43.     The judge's interpretation of the law is obviously not valid and post trial motions are pending and a notice of appeal has been filed. **(Exhibit 29)**

44.     Most importantly, if Michelle Zarro and Allan Rosenblum did not own the property Steve claimed to have given them for free, the property was his the whole time and was supposed to be part of his bankruptcy estate. What happened here is bankruptcy fraud!

45.     Plaintiff has still not been given a hearing on his Motion to Dismiss Defendant's Bankruptcy for Filing in Bad Faith and still has not been given the opportunity to present evidence to support the motion at such a hearing.

46.     Nonetheless, Plaintiff was informed that a hearing he was not made aware of was held without his knowledge and that Defendant's bankruptcy plan was confirmed. Plaintiff was not provided with any notice of hearing and has not been provided with an order from that hearing. However, he was told that his Motion to Dismiss has been denied **(Fn. 5)** without hearing or argument. Plaintiff was not even aware that the Bankruptcy Court returned the bankruptcy to active status. It was supposed to be held in abeyance and stayed pending the a final order in the fraudulent transfer case **(Exhibit 30)** and there has not been a final order issued in the case. **(Exhibit 29)**

47. This court previously ruled that Plaintiff had until 10 days after his Motion to Dismiss was decided to file an adversary complaint challenging dischargability of his debt in this matter. **(Exhibit 31)** The Motion to Dismiss has still not been ruled on but since the Defendant's plan has now been confirmed, he files his this complaint within 10 days of the plan confirmation.

---

**(Fn. 5)** There is confusion concerning whether or not that was true since Plaintiff has been told 3 different stories by 3 different court clerks at the time this complaint is being drafted. The other 2 versions given to Plaintiff were that the Trustee's Motion to Dismiss was denied and that the Trustee's Motion was withdrawn. However, a review of the docket does not show that Plaintiff's Motion to Dismiss for Filing in Bad Faith was ever ruled on at the December 3, 2019 hearing so there is currently no denial of the motion to challenge.

## CLAIM 1

**The Defendant's discharge of his $76,800.00 debt owed to Plaintiffs should be revoked pursuant to 11 U.S.C §727 (d)(1) and 11 U.S.C. §1230 (a) for being obtained fraudulently**

48.　11 U.S.C. §727 (d)(1) states:

    (d)　On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

        (1)　such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

49.　Similarly, 11 U.S.C. §1230 (a) states:

    (a)　On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1225 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

50.　Defendant clearly procured the discharge in question by fraud and Plaintiff did not know about the fraud until after the Defendant's plan was already confirmed, which would obviously have resulted in a discharge of the judgment Debtor owes to Plaintiff.

51.　First of all, the Defendant's counsel secretly filing motions to reinstate the bankruptcy and to request a confirmation of the Defendant's plan without making Plaintiff aware of the filings is fraudulent and should be sanctionable. **(Fn. 6)** This is particularly so since the court clerk maintains the defense counsel attached a certificate of service to the motion stating that Plaintiff was served with a copy of it.

---

**(Fn. 6)** If A. Jordan Rushie did not text Plaintiff to tell him he received a notification that the hearing occurred on December 3, 2019 Plaintiff would still not know about the hearing and at no time did the court ever send Plaintiff any notifications that the hearing was scheduled to occur. **(Exhibit 32)**

52.     Second, had Plaintiff been at the confirmation hearing, not only would he have argued the original merits of the Motion to Dismiss for Filing in Bad Faith, but he would have had the transcripts from the fraudulent transfer trial that proves that Steven Rosenblum hid and continues to hide several assets of substantial worth from his bankruptcy estate and that the assets Plaintiff contended he hid from his estate were fraudulently transferred.

53.     For example, Allan Rosenblum admitted at trial that he really didn't own Quick Fit USA, LLC or the 8919 New Falls Gym and that it was Debtor's all along. **(10/8/2019 N.T. pg. 155  line 7 - 16 ; Exhibit 12)** This gym was purchased for $90,500 and generated a profit of over $50,000 a year. **(10/7/2019 N.T. pg. 126  line 18 - pg. 127 line 6 ; pg. 131  line 1 - pg. 132 line 4 ; Exhibit 13 ; 10/8/2019 N.T pg. 115  lines 16 - 23 ; Exhibit 12 and 341 Testimony & Trial Exhibit P-102 at 36:38 - 37:42 & 1:15:02 - 1:15:32)** This is bankruptcy fraud and is one of the main reasons why Plaintiff has sought to have the Defendant's bankruptcy Dismissed for Filing in Bad Faith.

54.     It was fraudulent for the defendant and his counsel to go to the confirmation hearing that was secretly held and seek confirmation of the Defendant's plan knowing that this testimony, and much more like it (some of which is noted in the fact section of this Complaint) came out at the fraudulent transfer trial and proved that Defendant fraudulently hid a substantial amount of assets from the court in the instant bankruptcy. They were only able to hide facts like this from the court because Plaintiff was not there to raise them and that is exactly why he was never made aware of the hearing or the motion requesting it.

55.     It was also fraudulent for Defendant's counsel to prematurely file a praecipe for final judgment in the Common Pleas Court **(Exhibit 33)**, use it to show this court that there is a final judgment in that case, then strike it as being filed prematurely **(Exhibit 34)** well in advance of the December 3, 2019 hearing to reinstate the bankruptcy. Once again, the court ruled that the bankruptcy would not be taken out of abeyance until there was final order in that case. **(Exhibit 30)** There is absolutely no justification for Defendant's counsel to still pretend there was

a final judgment in that case 3 weeks after she vacated the judgment so that she could improperly have Defendant's bankruptcy reinstated. (And begin Plaintiff's back on top of that)

56.     The confirmation that was granted in this case was procured by deliberate fraud upon the court on multiple levels and Plaintiff asserts his right to have the confirmation revoked and the confirmation hearing held in abeyance pending the outcome of the instant adversary complaint on nondischargability and a hearing on the still outstanding Motion to Dismiss for Filing in Bad Faith which has already been sitting on the docket for 5 years now!

WHEREFORE, Plaintiff seeks a revokation of confirmation on the Defendant's plan for being obtained fraudulently pursuant to 11 U.S.C §727 (d)(1) and 11 U.S.C. §1230 (a) and requests that any future confirmation hearing be held in abeyance until after the court conducts a hearing on and resolves both the instant Adversary Complaint and Motion to Dismiss for Filing in Bad Faith.

### CLAIM 2

**The $76,800.00 judgment against Defendant for Trademark Infringement is not dischargeable under 11 U.S.C §523 (a)(6) on account of the damages in that case being the result of a "willful and malicious injury" inflicted by the Defendant and suffered by Plaintiffs.**

57.     11 U.S.C §523 (a)(6), excepts from discharge, any debt that arose on account of willful and malicious injury.

58.     The damages that were assessed in the Trademark Infringement case that led to the $76,800.00 award were found to have been the result of intentional (synonymous with willful) conduct on the part of the defendant. **(Exhibit 1)**

59.     The Defendant knew that this willful conduct would result in injury to both Plaintiff's reputation and to his Trademark/Intellectual Property.

60.     This willful conduct did in fact cause injury to Plaintiff's reputation and to his Trademark/Intellectual property.

61.     Anyone of reasonable intelligence would know that these very same actions are contrary to accepted duties in the ordinary relationships among people, and that they are injurious to another.

62.     The action surrounding Defendant's conduct in committing the Trademark Infringement at issue were Malicious and resulted in a willful and malicious injury to Plaintiff and his Trademark/Intellectual Property.

63.     These injuries that were inflicted by Defendant and upon Plaintiff were without just cause or excuse.

64.     Both Steven Rosenblum and his co-defendant Ofa Donaldson both committed the very same conduct and inflicted the very same willful and malicious injuries upon Plaintiff. Judge Madeline Coleman has already ruled that this conduct renders the $76,800.00 debt nondischargable pursuant to 11 U.S.C §523 (a)(6) after conducting a trial in Ofa Donaldson's bankruptcy. **(Bankruptcy Case # 16-15449-mdc / Adversary # 16-00445-mdc) (Exhibit 35)**

WHEREFORE, the $76,800.00 owed by the Defendant for the Trademark Infringement in this matter is non-dischargeable pursuant to 11 U.S.C §523 (a)(6)

### CLAIM 3

**The $76,800.00 judgment against Defendant for Trademark Infringement is not dischargeable under 11 U.S.C § 727(a)(4)(A), (B) & (D) on account of Defendant making a**

**false oath in connection with the case, testifying the he provided false information on his**

**bankruptcy filings and for withholding recorded information relating to his**

**property or financial affairs**

65. Defendant testified that he lied under oath at his 341 hearing in the instant bankruptcy. **(Evidence documented in paragraph 30 of this complaint)**

66. Defendant testified that he included false information on his bankruptcy filings in the instant bankruptcy. **(Evidence in documented in paragraph 30 of this complaint)**

67. Defendant withheld recorded information relating to the following property he owned that should have been made a part of his bankruptcy estate:

      A)    A 2016 Honda Pilot **(Exhibit 18 & 20)**

      B)    The documents related to the Defendant's Arm Wrestling Promotion **(Exhibit 21)**

      C)    The documents related to the Defendant's Boxing Promotion **(Exhibit 22)**

      D)    The documents related to the gym he owned and operated inside of the Pennsbury Racquet Club **(Exhibit 23)**

      E)    The documents related to the dogs he has bred and sold **(Exhibit 24)**

68. Defendant's father, Allan Rosenblum, testified that Defendant lied under oath and put false information on his bankruptcy paperwork when Allan testified that he was never half owner of Quick Fit USA, LLC, the 8919 New Falls Road Gym or the assets associated therewith. **(Evidence documented in paragraph 28 of this complaint)**

WHEREFORE, the $76,800.00 owed by the Defendant for the Trademark Infringement in this matter is non-dischargeable pursuant to 11 U.S.C § 727(a)(4)(A), (B) & (D).

**CLAIM 4**

**The $76,800.00 judgment against Defendant for Trademark Infringement is**
**not dischargeable under 11 U.S.C § 727(a)(2)(A) & (B) for intending to hinder, delay and**
**defraud Plaintiff by transferring, destroying, removing and concealing his assets.**

69.     Defendant, intended to and did in fact, hinder, delay and defraud Plaintiff from collecting his debt by transferring ownership of the following 2 gyms to the following 2 parties:

   A)     The 8919 New Falls Road Gym (Quick Fit USA, LLC) in Levittown to Allan Rosenblum. **(Fn. 7)**

   B)     The 8801 Torresdale Avenue Gym in Philadelphia, PA to Michelle Zarro.

70.     Defendant destroyed those assets and put them out of Plaintiff's reach as a creditor during his bankruptcy when he shut down made them unavailable for seizure and collection.

71.     Defendant concealed his true ownership and control over these assets in his bankruptcy filings.

72.     Defendant also concealed the existence of the following assets in his bankruptcy

   A)     A 2016 Honda Pilot **(Exhibit 18 & 20)**

   B)     The documents related to the Defendant's Arm Wrestling Promotion **(Exhibit 21)**

   C)     The documents related to the Defendant's Boxing Promotion **(Exhibit 22)**

   D)     The documents related to the gym he owned and operated inside of the Pennsbury Racquet Club **(Exhibit 23)**

   E)     The documents related to the dogs he has bred and sold **(Exhibit 24)**

**(Fn. 7)** As previously stated in paragraph 30 of this complaint, Allan Rosenblum testified he did not own that gym, the corporation or the assets associated therewith.

WHEREFORE, the $76,800.00 owed by the Defendant for the Trademark Infringement in this matter is non-dischargeable pursuant to 11 U.S.C § 727(a)(2)(A) & (B).

**V. Request for Relief;**

WHEREFORE, Plaintiff asks the court for the following relief:

A)      Issue an order revoking Defendant's discharge of the $76,800.00 debt Defendant owes Plaintiffs pursuant to 11 U.S.C §727 (d)(1) and 11 U.S.C. §1230 (a)

B)      Issue an order holding the Debtor's Confirmation Hearing in abeyance ending a hearing and resolution on the instant Adversary Complaint and the outstanding Motion to Dismiss for Filing in Bad Faith.

B)      Issue an order ruling that the $76,800.00 debt Defendant owes Plaintiffs for the Trademark Infringement he committed is non-dischargeable pursuant to 11 U.S.C §523 (a)(6)

C)      A trial by Jury.

D)      Any other relief Plaintiff may be entitled to that is not requested herein.

Respectfully submitted,

Bryan Kerwin

Date: 12/6/2016

Ryan Kerwin
Xtreme Caged Combat
240 Brittany Drive
Langhorne, PA 19047
(267) 702 - 8701
rkerwin@rushielaw.com