IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| Steven Rosenblum | : | |
| Debtor | : | Case No. 14-19756 (AMC) |

## MEMORANDUM OPINION

*Introduction*

Before the Court is the Motion for Sanctions and Contempt Against Debtor for Testifying to Committing Perjury and Bankruptcy Fraud in this Court ("Motion") filed by *pro se* creditor Ryan Kerwin ("Kerwin"). The Debtor Steven Rosenblum opposes this request for relief. For the reasons which follow, the Motion will be denied.

*Factual Background*

On August 13, 2014 Kerwin and Xtreme Caged Combat ("XCC") obtained a judgment in the amount of $76,800 against the Debtor and Extreme Cage Combat Fitness in the United States District Court for the Eastern District of Pennsylvania for trademark infringement.[1] On October 21, 2014, the District Court entered an order compelling Debtor to respond to Kerwin's discovery in aid of execution. When the Debtor failed to do so, the District Court entered an order requiring the Debtor to show cause why he should not be sanctioned for failing to comply. On December 11, 2014,

---

[1] Much of this factual background is taken verbatim from this Court's Opinion in *In re Rosenblum*, 545 B.R. 846 (Bankr.E.D.Pa. 2016) and for that reason record citations are unnecessary.

the day before the show cause hearing, Debtor filed a voluntary bankruptcy petition under Chapter 13 of the Code.

On January 8, 2015, the Debtor filed his Schedules and Statement of Financial Affairs (SoFA). On February 24, 2015, he amended both filings. On March 15, 2015, the Debtor appeared and testified at his 341 meeting of creditors. Two days later, he amended his SoFA for the second time.

On June 1, 2015, Kerwin disclosed to the Court that, three days prior, he and XCC ("Plaintiffs") had unilaterally filed a fraudulent transfer complaint ("Complaint") in the Bucks County Court of Common Pleas ("State Litigation") against third parties who allegedly received certain property from the Debtor prior to the Debtor's bankruptcy filing. Specifically, Plaintiffs sued Michelle Zarro, who is allegedly a close friend of the Debtor ("Zarro"), and Allan Rosenblum, who is the Debtor's father ("Rosenblum" and collectively with Zarro, "Defendants").

The Complaint alleged that the Debtor transferred 100% of his ownership interest in a gym located 8801 Torresdale Avenue in Philadelphia ("Torresdale gym") to Zarro and 50% of his ownership interest in another gym located in Levittown and referred to as Quick Fit USA, LLC ("Levittown gym" or "Quick Fit") to his father, without receiving any consideration in exchange for those transfers.  Accordingly, the Complaint sought to set aside the transfers to Zarro and Rosenblum under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Stat. and Cons.Stat. Ann. §§ 5101–5110 (West 2015).

2

The Court then requested briefing on Plaintiffs' right to file the State Litigation. In response, Plaintiffs filed a Motion to Hold Debtor's Bankruptcy Proceedings in Abeyance ("Abeyance Motion") pending the conclusion of the State Litigation. On February 29, 2016, this Court granted Kerwin derivative standing to pursue the State Litigation and also granted the Abeyance Motion. That lawsuit would last for the next 3½ years before the state court entered a judgment of compulsory non-suit against Kerwin in the Defendants' favor and is currently on appeal.

*Motion*

Although it remains to be seen whether Kerwin will ultimately prevail in the State Litigation, Kerwin has taken the testimony from it to form the factual basis of this Motion.[2] That testimony, alleges Kerwin, demonstrates that the Debtor has admitted to having falsely testified at his creditors meeting (¶ 1), to having made false disclosures in his bankruptcy schedules (¶¶ 1, 4), to having testified falsely in the trademark litigation (¶ 2), and to having filed a false property claim in a state execution proceeding (¶ 2). To this, Kerwin adds the trial judge's observation during the State Litigation as to the Debtor's credibility (¶ 3). On that basis, Kerwin demands that the Court "sanction the debtor, hold him in contempt for his criminal acts, revoke his confirmation, and dismiss his bankruptcy for his bad faith conduct."

*Evidence*

Paragraph 1 of the Motion maintains that the Debtor

made false statements under oath at his 341 hearing and put false
information on his bankruptcy filings. Some of these statements are as

---

[2] Kerwin obtained a certified copy of the State Litigation Transcript and filed it in the main bankruptcy case at Docket ## 367, 368

3

follows and are evidenced in the attached exhibits

Mot. p.1. Kerwin does not then expressly state what these falsehoods are but instead cites excerpts of testimony from the State Litigation and the Debtor's § 341 meeting as proof. As a result, the Court has been forced to read the excerpts from both proceedings several times in an attempt to compile a list of what Kerwin's alleged purported falsehoods may be.[3] It appears that these proofs were offered to demonstrate that the Debtor lied (1) at the 341 meeting when he stated that Michelle Zarro assumed the lease for the Torresdale gym so that the Debtor could remain on the property; and (2) in his Second Amended SoFA when he disclosed the 2014 transfer of gym equipment to Zarro because he had divested himself of that gym two years earlier.

*341 Meeting*

Kerwin's first example of the Debtor's perjury was allegedly made during his 341 meeting. During the trial in the State Litigation, Kerwin played what he says was an audio recording of the 341 meeting for the jury and interrogated the Debtor as follows:

Q. Was that your voice?

A. Yes.

Q. Do you agree that Michelle Zarro signed a lease specifically to keep you at that property for a $6,500 debt that you ---

A. Absolutely not.

Q. So was that testimony false?

A. That was false.

---

[3] Throughout the Motion, Kerwin provides numerous vague and confusing excerpts of earlier proceedings with little or no context and leaves the Court to figure out what Kerwin is trying to prove. On many prior occasions, the Court has urged Kerwin to obtain counsel, but to no avail.

4

Mot. 1, Ex. A. *quoting* Trial Tr. 10/8/19, p. 18:8-20. Kerwin continued to press the Debtor on this point:

    Q.    And did you not state in your 341 testimony that Ms. Zarro took over the lease and signed it because of that debt?

    A.    Absolutely not.

    Q.    You didn't say it?

    A.    That's not the truth.

*Id.* p. 27:5-10

The motion next purports to both quote and cite the 341-meeting testimony in order to show that the Debtor is lying:

    Q.    Why did you give her ownership of the property?

    A.    Because of all the headaches it was giving us, it wasn't profitable.

    Q.    Why her?

    A.    (6 second pause) She wants to be in fitness, she wants to lose weight, work out.

    Q.    Does she currently pay the rental fees at the property?

    A.    (13 second pause) No.

    Q.    So does that mean that you currently pay for the rent at that property?

    A.    I'm actually, the deal was, was the landlord because we were back in the hole like $6,500.00.

…

    Q.    So he would have let you continue to reside there?

    **Defense Counsel Objection**, do you know what he is going to do?

    Q.    I asked him would he

5

>    **Defense Counsel** How does he know?
>
>    Q.   Did he indicate to you at any time that he would allow you to reside there after the $6,500.00 you owed him was not paid?
>
>    A.   No, he threatened to shut the door and change the locks.

Mot. pp. 2-3. The Court has identified two problems with these proofs, one of which concerns reliability and the other relevance. Kerwin says that he is quoting from the 341 meeting; however, he did not attach a certified transcript of it. Instead, he offers his Sworn Affidavit that

> the transcript quotes from the Debtor's 341 hearing that are mentioned in my Motion for Contempt/Sanctions are true and correct and are able to be introduced into evidence at a future hearing on this matter.

Mot., Ex. C. In other words, what appears in the Motion is Kerwin's own transcription of the relevant excerpts from the 341 meeting. That prompted the Court to review the docket to see if Kerwin had filed a certified transcript of that hearing; he did not.[4] The Court also reviewed the trial transcript in the State Litigation to see if it the excerpts from the Debtor's 341 meeting which Kerwin played for the jury appear in the transcript. Likewise, they do not.[5] The only transcription of the Debtor's statements at that meeting is provided by Kerwin. This is no small matter given that, throughout the case, the Debtor has disputed Kerwin's right to offer anything less than a certified transcript of the 341 meeting

---

[4] In his reply to Debtor's Response, Kerwin asserts that the actual audio recording "has been placed into evidence on numerous occasions." Reply, p. 1-2. The Court, however, has been unable to find it. It is first itemized in the list of exhibits to his first Motion for Sanctions (Docket #50) as "CD of 341 Meeting" but the Court does not have that evidence in the record. Likewise, in his Motion for Summary Judgment it is listed as Ex. F, but it is not among the actual exhibits.

[5] Instead, what appears in the transcript are the parenthetical explanations *Audiotape played* and *Audiotape stopped*. No content is provided. *See* Mot., Ex. A, p. 18:6-7.

6

testimony.[6] Notwithstanding, the Court finds that Kerwin's affidavit as to his transcription will satisfy the requirement of authentication of this evidence; however, due consideration will be given to the fact that Kerwin, and not a disinterested party, undertook the transcription. *See* B.R. 9017 incorporating Federal Rule of Evidence 901(b)(1) (accepting as sufficiently authenticating an item of evidence the testimony of a witness with knowledge); *see also* 5 *Jones on Evidence*, § 36:37 (7th ed.) ("Unquestionably, the best way to offer testimony of a prior hearing is to present a certified transcript, recording or videotape.")

Aside from questions of reliability, the Court questions the relevance of these excerpts, because it does not appear that the Debtor's 341 testimony evidences a lie made by the Debtor. Specifically, the Debtor's 341 testimony does not appear to be contradicted by Debtor's State Litigation testimony. Instead, it appears that Kerwin points to these excerpts to suggest that there was an improper motivation in Michelle Zarro taking over the Torresdale lease. However, the 341 testimony does not indicate that she did so to help the Debtor; rather, the Debtor appears to believe that she had her own personal reasons for doing so.

The Debtor's comments during the State Litigation appear to confirm that there was no improper purpose because he denied that he stated at the 341 meeting "that Ms. Zarro took over the lease and signed it because of that debt" and that any

---

[6] *See* Debtor's Response to Kerwin's first Motion for Sanctions, Docket #55 (objecting to Kerwin's paraphrasing of the 341 meeting testimony); Debtor's Response to List of Exhibits, Docket #71 (disputing Kerwin's listing of CD of 341 meeting as exhibit in support of first motion for sanctions); and from the State Litigation, 10/7/20, Trial Tr 189:1-5 (objecting to Kerwin's offer to play the audio recording of the 341 meeting and demanding instead a certified transcript of the recording).

suggestion to the contrary was "not the truth." Thus, from what Kerwin offers on this point, the Debtor's statements are not inconsistent.

*Second Amended SoFA*
*And Transfer of Equipment*

Kerwin next references the Debtor's statement regarding the disposition of the equipment at the Torresdale gym. The Second Amended SoFA discloses the transfer of the equipment to Ms. Zarro for a stated sum in July/August 2014. In the State Litigation, Kerwin cross examined the Debtor who admitted that he was out of the business after December 2012. If that was so, Kerwin's cross-examination continued, then how could the Debtor list a transfer of the business's equipment in his SoFA. The Debtor had to admit to Kerwin that the disclosure was "false." Mot., p. 3. Ex. A, Trial Tr. 10/8/19, pp. 68:2 – 69:10. However, from all of the excerpts shows to the Court, it appears that the Debtor was merely confused about the specific date that the Debtor was out of the business given the passage at time and, at worst, should have amended the SoFA regarding the date that he transferred the equipment to Ms. Zarro.

*District Court Testimony*
*and the Property Claim*

From there, ¶ 2 of the Motion adds that the Debtor "also testified to committing perjury regarding the transfers of his assets in the Eastern District Court." This refers to the trademark infringement suit which Kerwin filed in the Federal District Court in Philadelphia. That allegedly false testimony is presented indirectly: Kerwin provides 2½ pages of excerpts from the State Litigation wherein he cross-examines the Debtor about certain testimony given in the trademark case:

**(N.T. 10/7/19 Pg. 23 lines 21 – 25; Exhibit B)**

8

BY MR. KERWIN:

Q. So are you now admitting that you committed perjury *during that trial*? I'm asking 'cause if it's untruthful ---

A. My recollection, that is not the truth

**(N.T. 10/7/19 Pg. 26 lines 20 – 25; Exhibit B)**

THE COURT: And I sustained the objection. Ask your next question. He's already testified that the statements he made *in that transcript* he's now saying were not truthful.

**(N.T. 10/7/19 Pg. 48 lines 13 – 25; Exhibit B)**

Q. How did you come up with that date?

A. What was the date again?

Q. August 20th, 2012.

A. That was the date Quick-Fit took control of Charter.

Q. Correct. *That was your testimony*. And did you not also testify that was the same date that Quick-Fit took control of the 8801 Torresdale Gym?

A. They never took control of 8801 Torresdale.

Q. So I want to make sure it's clear, so are you saying that all of this *testimony that I'm holding in my hands* is untruthful?

A. If that's what it says, yes.

**(N.T. 10/7/19 Pg. 55 lines 14-21; Exhibit B)**

Q. So was Mr. Donaldson asking you questions in those portions of *the transcripts*?

A. Yes.

9

Q.  Okay, So the questions that you said you answered untruthful four or five times on the same issue were responsive to something that Mr. Donaldson asked, correct, not myself?

A.  Yes.

**(N.T. 10/7/19 Pg. 156 lines 9 – 14; Exhibit B)**

Q.  Did you change your position since testifying in *these transcripts*?

A.  I am telling you the truth, that's not the case.

Q.  So you've changed your position, correct?

A.  Correct.

**(N.T. 10/7/19 Pg. 161 line 18 – Pg. 162 line 9; Exhibit B)**

Q.  Okay, when did you start contending that was not the truth?

A.  This is the first time I'm seeing this.

Q.  And when did you start contending that that was not the truth? I'm going to keep asking it. When?

A.  It's always not been the truth.

Q.  Okay. When did you start contending, because you *testified at that hearing* it was the truth. When did you start saying that it wasn't?

A.  It's not the truth.

Q.  I'm going to keep asking

A.  Today ---

Q.  Give me a timeframe.

A.  Maybe 15 minutes ago when you asked me, that's not the truth.

10

**(N.T. 10/7/19 Pg. 169 lines 8-18; Exhibit B)**

Q. Okay. So why did you wait more than five years to change your position?

A. You mean today?

Q. Yeah. You said 15 minutes ago.

A. We're in court right now and you just asked me the question.

Q. Yeah, and I'm asking you why it took you this long to change your position on it.

A. It didn't take me this long.

Q. When did you change your position?

A. It's always been false.

Mot., pp. 4-7 (emphasis added).

Kerwin appears to be trying to prove in the State Litigation that the Debtor lied at a prior hearing. He attempts this, however, without providing the Court with a transcript of that prior hearing. Not only does Kerwin *not* provide a certified copy of the transcript from the trademark infringement trial, he does not even provide his own transcription of that trial. So, while the Debtor admittedly testifies that some earlier answers were either "not truthful" or "false", the Court cannot determine exactly what the Debtor said during the prior hearing and if the Debtor meant by those responses that they were simply incorrect. Moreover, the allegedly false statements were allegedly made to another court, not this Court.

*False Property Claim*[7]

---

[7] This instance of false testimony is not plead expressly in the motion. Instead, the trial transcript excerpt which discusses the property claim immediately follow those excerpts from ¶ 2 quoted above. *See* Mot. pp. 6-7.

11

Next, Kerwin cites his questioning of the Debtor during the State Litigation about the property claim he filed in June 2014. That claim was filed in response to a pending Sheriff's Sale of personal property at the Torresdale gym. The underlying judgment was against Ofa Donaldson, the Debtor's former partner. Kerwin's cross-examination asks how the Debtor could make such a claim for property when his Second Amended SoFA disclosed that, as of December 2012, he was no longer involved in the gym. In other words, Kerwin questions how the Debtor could have filed a property claim as to property which he no longer owned. Kerwin next asked the Debtor if that constitutes filing a fraudulent claim and the Debtor's response was that he was "help[ing] out a friend." This appears to be closer to an admission of false testimony but, again, the false statement was made to the Sheriff, not this Court or any other court.

*Quick Fit Gym*

From there, ¶ 4[8] alleges that the "debtor fraudulently omitted a gym he owned as an asset of his estate. Specifically, a gym he states was run under Quick Fit USA, LLC." Kerwin contends that Quick Fit earned profits of more than $50,000 annually.[9] It is not clear, however, upon what basis Kerwin alleges a fraudulent omission until one comes to ¶ 5 of the Motion. There, it is alleged that

> Debtor's claim that his father Allan Rosenblum owned half of his gym/Quick Fit USA, LLC has resulted in the gym and all of its assets from being put out of Plaintiffs' reach as a creditor. Allan Rosenblum's testimony proves that Defendant committed bankruptcy fraud by claiming he was not the sole owner of these assets.

---

[8] The Court will pass over ¶ 3 at this point. The reason for that is because it does not allege another instance of lying on Debtor's part. Instead, it cites the state judge's assessment of the Debtor's untruthful character.

[9] As it turns out, the $50,000 constitutes revenues and not profits. *See* Mot., Ex. A, Trial Tr. 16:2-3.

12

Kerwin is correct that, in the Second Amended SoFA, the Debtor discloses his 50% ownership of Quick Fit. *See* 2d Am. SoFA, #18. In the State Litigation, the Debtor testified that his father owned the other half. Trial Tr. Oct. 7, 2019, p. 125:16.[10]

That evidence, however, conflicts with the testimony that the Debtor's father gave during the State Litigation. It appears from Allan Rosenblum's testimony that he limited his involvement in Quick Fit to its incorporation which occurred in 2009. He also testified to making no financial contribution to it, to not being involved in daily operations, and to receiving no income or profit from it. Mot. Ex. A, Trial Tr. 141-42. He continued to maintain that he does not own any part of Quick Fit and that his son is the owner, notwithstanding that he was listed as a 50% owner on the company's incorporation statement. *Id*. 139:2. From everything the Court has seen, though, it appears merely that the Debtor's father is confused about his ownership interest in QuickFit and, more importantly, that the documents confirm the Debtor's disclosures in his bankruptcy documents.

*Observations of
the Trial Judge*

Kerwin offers not only *his* assessment of the Debtor's allegedly deceitful character, but the comments of the presiding state court judge. Paragraph 3 of the Motion quotes the colloquy between the State Litigation judge and Debtor's counsel as to whether the property of the gym was abandoned to Ms. Zarro. Mot., p. 7. On this

---

[10] His father is not listed among the Current Partners, Officers, Directors and Shareholders in the original SoFA. That was changed in the Second Amended SoFA where the Debtor states that Quick Fit is owned 50% with Allan Rosenblum and his father *is* listed among the Current Partners, Officers, Directors and Shareholders. Compare SoFA, Item #21 with 2d Am. SoFA, Item #21.

point, Debtor's counsel was about to offer certain testimony of the Debtor when the judge interrupted him. What followed was a withering assessment of the Debtor's credibility. In short, the judge would not ascribe an iota of truthfulness to anything that this Debtor might say. *Id*. Ex. A, Trial Tr. pp. 256:13-257:3.

*Perjury*

While the motion lists instances where the Debtor either admitted that his testimony was "false," "not truthful," or was irreconcilable with earlier statements, the question is whether this rises to the level of perjury. That is the first offense which Kerwin's motion charges the Debtor with. Perjury lies against one who

> having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true

18 U.S.C.A. § 1621(1) (West). *See U.S. v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116, 122 L. Ed. 2d 445 (1993) (explaining that one "violates this statute if who gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory"). Here, while Kerwin has set forth in the Debtor's own words examples of false testimony, the record does not demonstrate the materiality of those statement or the Debtor's state of mind when he made them. At most, it appears that the Debtor and other witnesses made potentially contradictory statements as a result of confusion, mistake or faulty memory and no evidence has been produced regarding the Debtor's intentions when making

14

such statements. Thus, in the absence of evidence demonstrating the materiality of statements and the Debtor's state of mind, there can be no finding of perjury.

*Bankruptcy Fraud*

The other crime in the title of Kerwin's motion is that the Debtor is guilty of bankruptcy fraud. Section 157 of Title 18 defines the offense as

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so--
>
> **(1)** files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
>
> **(2)** files a document in a proceeding under title 11; or
>
> **(3)** makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, …

18 U.S.C.A. § 157 (West). In his bankruptcy disclosures, there are two instances where this Debtor made representations that are either self-contradicted or refuted by other evidence. First, the Court cannot reconcile Debtor's statement in his Second Amended SoFA that he transferred the gym equipment to Michelle Zarro in the Summer of 2014 with his statement—made in the very same document—that he was out of the gym after December 2012. *Compare* 2d Am. SoFA, Item #18 with Item #10. But that does not necessarily indicate concealment because he is disclosing the transfer of an asset, albeit inconsistently as to the date, as opposed to concealing the transfer. This strikes the Court as an instance of carelessness as opposed to deceit, especially since it is unclear what advantage the Debtor gained from such inconsistency.

15

With regard to Debtor's disclosure of the extent of his ownership interest in the Torresdale gym, he claims that his father held a 50% interest in that entity which was directly contradicted by this father at trial. However, without more, the Court cannot tell if this discrepancy was intentional, a misunderstanding between father and son, or a result of the father's confusion. Given that all of the corporate documents appear to support the disclosures in the Debtor's bankruptcy documents, it appears that the Debtor's father may be confused about his ownership interest in the Torresdale gym.

*Criminal Contempt and Sanctions*

Based upon the foregoing, the Court does not see how it can grant the specific types of relief which Kerwin requests. Beginning with his contempt request, the Court finds it to be inapposite. To reiterate, he seeks a finding of criminal contempt and appropriate sanctions. *See* Prayer, Mot. p. 9. It is within a federal court's power and discretion to hold a defendant in criminal contempt and punish by fine, imprisonment, or both, for disobedience or resistance to an order of the court. 18 U.S.C.S. § 401(3). "Any person who commits criminal contempt may be punished ... after prosecution on notice." Fed. R. Crim. P. 42(a). "The propriety of imposing criminal contempt sanctions depends upon whether punishment is necessary to vindicate the court's authority." *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 897 (3d Cir. 1992). It must be proven beyond a reasonable doubt that the defendant "willfully disobeyed" a court's order. *United States v. Juror No. One*, 866 F. Supp. 2d 442, 448 (E.D. Pa. 2011).

Here, however, the allegations made by Kerwin against the Debtor do not involve an order of court. It involves violations of duties prescribed by statute. That is not to say

16

that his conduct might not be otherwise actionable, but it is not the basis for a finding of contempt and resulting sanctions. *See, e.g., In re Agrawal*, 581 B.R. 651, 654 (Bankr.W.D.Okla.2018) ("From what the Court has been able to glean from this rambling and incoherent Motion, there appears to be decade-long history of acrimony between him, Walker and Parent and numerous allegations of wrongdoing are made against Walker and Parent. However, none of those allegations assert that Walker and/or Parent violated *an order of this Court*.") [italics in original]

*Revocation of Confirmation*

Aside from criminal punishment, Kerwin asks the Court for bankruptcy-specific relief. He demands that this Court's order confirming the Debtor's Chapter 13 plan be vacated. In that regard, § 1330 of the Code provides:

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C.A. § 1330(a) (West). The Third Circuit has explained that fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order. *In re Fesq*, 153 F.3d 113, 120 (3d Cir. 1998). Based upon the evidence presented to the Court, the Court does not find that the Debtor has committed fraud. At most, the Debtor was careless in filling out his SoFA and it appears that his father was confused about his ownership interest in a shared gym with the Debtor. Moreover, there is no averment that the alleged falsehoods and inconsistencies resulted in the Debtor having obtained confirmation of his plan. Indeed, the motion does not mention any of the procedural

17

history of this bankruptcy case whatsoever. For that reason, revocation of confirmation must be denied.

*Bad Faith Dismissal*

The last measure of bankruptcy-related relief to which Kerwin claims entitlement is dismissal of the case on grounds of bad faith.[11] Section 1307 provides, in that regard:

> the court may … dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, … for cause, including--
>
> **(1)** unreasonable delay by the debtor that is prejudicial to creditors;
>
> **(2)** nonpayment of any fees and charges required under chapter 123 of title 28;
>
> **(3)** failure to file a plan timely under section 1321 of this title;
>
> **(4)** failure to commence making timely payments under section 1326 of this title;
>
> **(5)** denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
>
> **(6)** material default by the debtor with respect to a term of a confirmed plan;
>
> **(7)** revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
>
> **(8)** termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
>
> **(9)** only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

---

[11] The parties will recall that Mr. Kerwin sought dismissal of the bankruptcy just days into the case. *See* Docket #8.

18

> **(10)** only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or
>
> **(11)** failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C.A. § 1307(c) (West). The statutory examples of cause for dismissal set forth above are not exclusive. *In re Orawsky*, 387 B.R. 128, 137 (Bankr.E.D.Pa. 2008). Concurring with other circuits, the Third Circuit has held that a lack of good faith in filing is sufficient cause for dismissal under this section. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996). The analysis proceeds "on a case-by-case basis in light of the totality of the circumstances." *Id*. Relevant factors for making this determination include

> the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id. quoting In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992). Of the above factors, the only factor alleged by Kerwin is whether the debtor has been forthcoming with the bankruptcy court and the creditors. Based upon the totality of the circumstances, it does not appear, at this point in time, that the Debtor has acted in bad faith. The discrepancies in the Debtor's schedules and SoFA are both relatively minor and appear due to carelessness.

19

*Summary*

Based upon the foregoing, Kerwin has failed to allege any basis for this Court to sanction the Debtor at this time. The Motion for Sanctions and Contempt Against Debtor for Testifying to Committing Perjury and Bankruptcy Fraud in this Court, therefore, is denied.

An appropriate Order follows.

BY THE COURT

Dated: October 1, 2020

Ashely M. Chan
United States Bankruptcy Judge